# Exhibit A

1    Peter Strojnik, State Bar No. 6464
     **STROJNIK P.C.**
2    1 EAST WASHINGTON STREET, SUITE 500
     PHOENIX, AZ 85004
3    (774) 768-2234
     Attorney for Plaintiff
4    Case Specific Email Address:
5    525sgilbertrd@aid.org

6

7          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8               **IN AND FOR THE COUNTY OF MARICOPA**

9

| | |
|---|---|
| 10   Advocates for Individuals with Disabilities, Foundation, Inc., | **CV2016 008849** |
| 11 | Case No: |
| 12         Plaintiff, | |
| 13 | **SUMMONS** |
| | If you would like legal advice from a lawyer, Contact the Lawyer Referral Service at 602-257-4434 |
| 14   vs. | or |
| | www.maricopalawyers.org |
| 15   GILBERT PLAZA INC | Sponsored by the |
|          Defendants. | Maricopa County Bar Association |
| 16 | |

17   **TO THE ABOVE NAMED DEFENDANT(S):**

18   **YOU ARE HEREBY SUMMONED** and required to appear and defend, within the time
19   applicable, in this action in this Court.  If served within Arizona, you shall appear and
     defend within 20 days after the service of the Summons and Complaint upon you,
20   exclusive of the day of service.  If served out of the State of Arizona – whether by direct
21   mail, by registered or certified mail, or by publication – you shall appear and defend
     within 30 days after the service of the Summons and Complaint upon you is complete,
22   exclusive of the day of service.  When process is served upon the Arizona Director of
23   Insurance as an insurer's attorney to receive service of process against it in this State, the
     insurer shall not be required to appear, answer or plead until the expiration of 40 days of
24   such service upon the Director.  Service by registered or certified mail without the State
     of Arizona is complete 30 days after the date of filing the receipt and affidavit of service
25   with the Court.  Service by publication is complete 30 days after the date of first
26   publication.  Direct service by mail is complete when made.  Service upon the Arizona
     Motor Vehicle Superintendent is complete 30 days after the Affidavit of Compliance and
27   return receipt of Officer's Return. **RCP 4.1 and 4.2; A.R.S. §§ 20-222, 28-502, 28-503.**

28

**YOU ARE HEREBY NOTIFIED** that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint. **YOU ARE CAUTIONED** that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of the Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or Response upon Plaintiff's attorney, or if Plaintiff is not represented by counsel, upon Plaintiff.

A request for reasonable accommodations for persons with disabilities must be made to the division assigned to the case by the parties at least three (3) days before the scheduled court proceeding.

The name and address of Plaintiff is:

Advocates for Individuals with Disabilities Foundation, Inc.
40 North Central Avenue, Suite 1400
Phoenix, AZ 85004

SIGNED AND SEALED this date:  **COPY**

_____

AUG 0 2 2016

MICHAEL K. JEANES, CLERK
_____
Clerk of Court   DEPUTY CLERK

2

Peter Strojnik, State Bar No. 6464
**STROJNIK P.C.**
1 EAST WASHINGTON STREET, SUITE 500
PHOENIX, AZ 85004
(774) 768-2234
Attorney for Plaintiff
Case Specific Email Address:
525sgilbertrd@aid.org

**COPY**

AUG 0 2 2016

MICHAEL K. JEANES, CLERK

DEPUTY CLERK

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

ADVOCATES FOR INDIVIDUALS
WITH DISABILITIES FOUNDATION,
INC., a charitable non-profit foundation,

                    Plaintiff,

vs.

GILBERT PLAZA INC;

                    Defendant.

Case No: CV2016 008849

**VERIFIED COMPLAINT**

Plaintiff alleges:

## PARTIES

1. Plaintiff, Advocates for Individuals with Disabilities Foundation, Inc. ("Foundation") is a non-profit charitable foundation and performs the functions of a traditional association representing individuals with disabilities. *See* www.aid.org.

2. Defendant, GILBERT PLAZA INC, owns and/or operates a business located at 525 s gilbert rd  mesa az 85204  which is a place of Public Accommodation pursuant to 42 U.S.C. § 12181(7).

## INTRODUCTION

3. Plaintiff brings this action against Defendant, alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., (the "ADA") and its

implementing regulations and A.R.S. Title 41, Chapter 9, Article 8, §§41-1492 et seq. and its implementing regulations, R10-3-401 et seq. (the "AzDA")

4. Plaintiff is a charitable non-profit foundation. Plaintiff is known to have past, present and future relationships or associations with individuals with disabilities as defined in 28 CFR § 36.205. In connection with 28 CFR §36.205, and generally relating to third-party standing, Plaintiff alleges:

   a. Plaintiff has a close relationship with former, current and future disabled individuals who are directly protected by the ADA as discrete and insular minorities. *See*, e.g., www.aid.org.

   b. Plaintiff's association with former, current and future disabled individuals arises from Plaintiff's charitable acts of giving to the disabled community, which are interests that are germane to the association's purpose.

   c. Plaintiff's close relationship to the third party disabled individuals is such that third party disabled individuals cannot be reasonably expected to properly frame the issues and present them with the necessary adversarial zeal to the Court. Third party disabled individuals are hindered to litigate by virtue of their status as minors and/or their lack of mobility and/or financial resources.

   d. David Ritzenthaler is a member of the Foundation by virtue of being President, Director and Chairman and suffers from disability as this term is defined in A.R.S. §41-1492(6) and interpreted pursuant to A.R.S. §41-1492.12.

   e. Because only injunctive and declaratory relief is requested, participation in the action by individual disabled individuals is not required.

5. Plaintiff brings this civil rights action against Defendant for failing to design, construct, and/or own or operate Public Accommodations that are fully accessible to, and independently usable by, individuals with disabilities. Plaintiff seeks a declaration that Defendant's Public Accommodation violates federal and state law and an injunction requiring Defendant to install means of access in compliance with ADA requirements so that their facility is fully accessible to, and independent

2

usable by, individuals with disabilities. Plaintiff further requests that, given Defendant's historical failure to comply with the ADA's mandate, the Court retain jurisdiction of this matter for a period to be determined to ensure that Defendant comes into compliance with the relevant requirements of the ADA and AzDA, and to ensure that Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

6.   In compliance with R10-3-405(H)(1), Plaintiff's address is 40 North Central Avenue, Suite 1400, Phoenix, Arizona 85004

## JURISDICTION AND VENUE

7.   This Court has original jurisdiction over the AzDA claims by virtue of A.R.S. §§ 12-123 and 41-1492.8 and concurrent jurisdiction over the ADA claims by virtue of A.R.S. § 12-123 and Article 6, Section 14(1) of the Arizona Constitution gives the superior court original jurisdiction of "[c]ases and proceedings in which exclusive jurisdiction is not vested by law in another court."

## THE ADA AND ITS IMPLEMENTING REGULATIONS

8.   On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

9.   The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of Public Accommodation, transportation, and other important areas of American life.

10. Title III of the ADA prohibits discrimination in the activities of places of Public Accommodation and requires places of Public Accommodation to comply with ADA standards and to be readily accessible, and independently usable by, individuals with disabilities. 42 U.S.C. §§ 12181-89.

11. Title III states, inter alia, that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." *See* 42 U.S.C.   §12182(b)(1)(A)(ii).   In   addition,   §12182(b)(1)(A)(iii)   and

3

§12182(b)(1)(B)] are intended to prohibit exclusion and segregation of individuals with disabilities and the denial of equal opportunities enjoyed by others, based on, among other things, presumptions, patronizing attitudes, fears, and stereotypes about individuals with disabilities. 28 C.F.R. pt. 36, app. C (2011).

12. On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.

13. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.

14. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local governmental entities, as well as individuals with disabilities.

15. In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

16. The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

17. On September 30, 2004, the DOJ issued an advanced notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

18. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

19. The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.

## THE AzDA AND ITS IMPLEMENTING REGULATIONS

4

20. The AzDA and its implementing regulations, §§41-1492 et seq. and R10-3-401 et seq. provide similar prohibitions and remedies to the ADA and its implementing regulations.

## ALLEGATIONS COMMON TO ALL COUNTS

21. Pursuant to CFR 36-302(1)(ii) and otherwise, on or about 5/6/2016, Plaintiff, who is known to have a relationship or association with individuals with disabilities and directed by David Ritzenthaler, an individual with disabilities, conducted an investigation of Defendant's Public Accommodation for purposes of ascertaining whether it complies with the ADA and AzDA. Plaintiff's investigation confirmed that Defendant's Public Accommodation was not accessible to individuals with disabilities in the following particulars:

   1. Violation of the 2010 ADA Standards of Accessibility Design 502.6 in that it fails to include a sign with the International Symbol of Accessibility complying with 703.7.2.1

   Plaintiff has actual knowledge of at least one barrier related to third party disabled individuals as indicated in the preceding allegation. Therefore, third party individuals with disabilities, including current and future members of the association are currently deterred from visiting Defendant's Public Accommodation by accessibility barrier(s).

22. Without the presence of adequate and or accessible parking spaces, sufficient designation or signage and or sufficient disbursement of such parking spaces, third party individuals with disabilities, including members of the Foundation, are prevented from equal enjoyment of the Defendant's Public Accommodation.

23. As a result of Defendant's non-compliance with the AzDA and the ADA, third party individuals with disabilities, including members of the Foundation, are deterred from visiting Defendant's Public Accommodation in the future unless and until all AzDA and ADA violations have been cured.

24. The existence of barriers deters third party individuals with disabilities, including members of the Foundation, from conducting business or returning to Defendant's Public Accommodation.

5

25. As a result of Defendant's non-compliance with the ADA and AzDA, third party disabled individuals, including members of the Foundation, unlike persons without disabilities, are denied equal access.

26. Plaintiff verified that Defendant's Public Accommodation lacks the mandatory elements required by the 2010 Standards to make their facility fully accessible to and independently usable by individuals with disabilities, including members of the Foundation.

27. Plaintiff has a keen interest in whether Public Accommodations are fully accessible to, and independently usable by, individuals with disabilities, including members of the Foundation, specifically including an interest in ensuring that parking spaces comply with the 2010 Standards.

28. Third party disabled individuals have been injured by Defendant's discriminatory practices and failure to remove architectural barriers to equal access. These injuries include being deterred from using Defendant's facilities due to the inaccessibility and/or insufficient designation of appropriate parking .

29. Without injunctive relief, Plaintiff and individuals with disabilities, including members of the Foundation, will continue to be denied equal access and unable to independently use Defendant's Public Accommodation under ADA and AzDA.

## COUNT ONE
### (Violation of Title III of ADA and Title 41 of AzDA)

30. Plaintiff incorporates all allegations heretofore set forth.

31. Defendant has discriminated against third party individuals with disabilities, including members of the Foundation, in that it has failed to make its Public Accommodation fully accessible to, and independently usable by, individuals who are disabled in violation of AzDA, Article 8, Chapter 10 of Title 41 of the Arizona Revised Statutes, A.R.S. §§ 41-1492 *et seq.* and its implementing regulations, R10-3-401 et seq. and the ADA, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., and its implementing regulations 28 CFR §§ 36.101 *et seq.*

32. Defendant has discriminated against third party individuals with disabilities, including members of the Foundation, in that it has failed to remove architectural barriers to make its Public Accommodation fully accessible to, and independently usable by individuals who are disabled in violation of the AzDA and the ADA and, particularly, 42 U.S.C. §12182(b)(A)(iv) and Section 208.2 of the 2010 Standards, as described above. Compliance with the requirements of section 208.2 of the 2010 Standards would neither fundamentally alter the nature of Defendant's Public Accommodation nor result in an undue burden to Defendant.

33. Compliance with AzDA and the ADA is readily achievable by the Defendant due to the low costs. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense .

34. Conversely, the cessation of compliance with the ADA law is also readily achievable by redrawing the parking spaces to its original configuration and or changing signage back to the same. Therefore, injunctive relief should issue irrespective of Defendant's potential voluntary cessation pursuant to the Supreme Court's announcement in *Friends of the Earth* case.[3]

35. Defendant's conduct is ongoing, Plaintiff invokes Plaintiff's statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees, both pursuant to statute and pursuant to the Private Attorney General doctrine .

36. Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements

---

[3] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000):

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

7

of the AzDA and ADA that are discussed above, Defendant's non-compliance with the AzDA and ADA's mandatory requirements may be or are likely to recur.

## COUNT TWO
### (Violation A.R.S. Title 41, Chapter 9, Article 8, §§41-1492 et seq. AND Implementing Regulations)

37. Plaintiff realleges all allegations heretofore set forth.

38. Plaintiff and third party individuals with disabilities, including members of the Foundation, have been damaged and injured by the Defendant's non-compliance with the AzDA.

39. Pursuant to A.R.S. § 41-1492.08, and §41-1492.09, Plaintiff has the right to enforce the AzDA by the issuance of injunctive relief.

40. Pursuant to A.R.S. § 41-1492.08, Plaintiff is entitled to preventive and mandatory relief.

41. Mandatory relief includes relief mandated by A.R.S. § 41-1492.09 obligating the Office of the Attorney General to take actions specified therein.

42. Pursuant to A.R.S. § 41-1492.09(B)(2), Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $5,000.00.

43. Pursuant to A.R.S. § 41-1492.09(F), Plaintiff is entitled to attorney's fees and costs in an amount proven but in no event less than $5,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

j. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Public Accommodation was fully accessible to, and independently usable by, individuals with disabilities;

k. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and

8

28 CFR § 36.504(a), which directs Defendant to take all steps necessary to bring its Public Accommodation into full compliance with the requirements set forth in the ADA and its implementing regulations, so that the facility is fully accessible to, and independently usable by, individuals with disabilities, including members of the Foundation, specifically Sections 208.2 of the 2010 Standards, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facility is fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

l. Irrespective of Defendant's "voluntary cessation" of the ADA violation, if applicable, payment of costs of suit, expenses of suit and attorney's fees;

m. Order closure of the Defendant's place of Public Accommodation until Defendant has fully complied with the ADA and AzDA;

n. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of AzDA;

o. Irrespective of Defendant's "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to AzDA which directs Defendant to take all steps necessary to bring its facility into full compliance with the requirements set forth in the AzDA, and its implementing regulations, so that the facility is fully accessible to, and independently usable by individuals with disabilities, including members of the Foundation, specifically including ensuring parking spaces comply with the 2010 Standards as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facility is fully in compliance with the relevant requirements of the AzDA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

p. For damages authorized by § 41-1492.09(B)(2) in an amount no less than $5,000.00;

9

q. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and A.R.S. § 41-1492.09(F) and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines[4] in an amount no less than $5,000.00; and,

r. The provision of whatever other relief the Court deems just, equitable and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Arizona Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

**RESPECTFULLY SUBMITTED** this Monday, July 25, 2016.

STROJNIK P.C.

/s/ Peter Strojnik
Peter Strojnik (6464)
Attorney for Plaintiff

## VERIFICATION COMPLIANT WITH R10-3-405

I declare under penalty of perjury that the foregoing is true and correct.

DATED this Monday, July 25, 2016.

/s/ *David Ritzenthaler*

By: David Ritzenthaler, Director
Advocates for Individuals with
Disabilities Foundation, Inc.

---

[4] As applicable to ADA cases, see *Coppi v. City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1

U.S. Department of Justice
Civil Rights Division
*Disability Rights Section*



**Americans with Disabilities Act**

# ADA Business BRIEF:
## Restriping Parking Lots

### Accessible Parking Spaces
When a business restripes a parking lot, it must provide accessible parking spaces as required by the ADA Standards for Accessible Design.

In addition, businesses or privately owned facilities that provide goods or services to the public have a continuing ADA obligation to remove barriers to access in existing parking lots when it is readily achievable to do so. Because restriping is relatively inexpensive, it is readily achievable in most cases.

This ADA Business Brief provides key information about how to create accessible car and van spaces and how many spaces to provide when parking lots are restriped.



One of eight accessible parking spaces, but always at least one, must be van accessible.

### Accessible Parking Spaces for Cars
Accessible parking spaces for cars have at least a 60-inch-wide access aisle located adjacent to the designated parking space. The access aisle is just wide enough to permit a person using a wheelchair to enter or exit the car. These parking spaces are identified with a sign and located on level ground.

### Van-Accessible Parking Spaces
Van-accessible parking spaces are the same as accessible parking spaces for cars except for three features needed for vans:

■ a wider access aisle (96") to accommodate a wheelchair lift;

■ vertical clearance to accommodate van height at the van parking space, the adjacent access aisle, and on the vehicular route to and from the van-accessible space, and

■ an additional sign that identifies the parking spaces as "van accessible."

### Minimum Number of Accessible Parking Spaces
ADA Standards for Accessible Design 4.1.2 (5)

| Total Number of Parking Spaces Provided (per lot) | Total Minimum Number of Accessible Parking Spaces (60" & 96" aisles) | Van-Accessible Parking Spaces with min. 96" wide access aisle | Accessible Parking Spaces with min. 60" wide access aisle |
|---|---|---|---|
| | Column A | | |
| 1 to 25 | 1 | 1 | 0 |
| 26 to 50 | 2 | 1 | 1 |
| 51 to 75 | 3 | 1 | 2 |
| 76 to 100 | 4 | 1 | 3 |
| 101 to 150 | 5 | 1 | 4 |
| 151 to 200 | 6 | 1 | 5 |
| 201 to 300 | 7 | 1 | 6 |
| 301 to 400 | 8 | 1 | 7 |
| 401 to 500 | 9 | 2 | 7 |
| 501 to 1000 | 2% of total parking provided in each lot | 1/8 of Column A* | 7/8 of Column A** |
| 1001 and over | 20 plus 1 for each 100 over 1000 | 1/8 of Column A* | 7/8 of Column A** |

\* one out of every 8 accessible spaces     \*\* 7 out of every 8 accessible parking spaces

October 2001

## Location

Accessible parking spaces must be located on the shortest accessible route of travel to an accessible facility entrance. Where buildings have multiple accessible entrances with adjacent parking, the accessible parking spaces must be dispersed and located closest to the accessible entrances.

When accessible parking spaces are added in an existing parking lot, locate the spaces on the most level ground close to the accessible entrance. An accessible route must always be provided from the accessible parking to the accessible entrance. An accessible route never has curbs or stairs, must be at least 3-feet wide, and has a firm, stable, slip-resistant surface. The slope along the accessible route should not be greater than 1:12 in the direction of travel.

Accessible parking spaces may be clustered in one or more lots if equivalent or greater accessibility is provided in terms of distance from the accessible entrance, parking fees, and convenience. Van-accessible parking spaces located in parking garages may be clustered on one floor (to accommodate the 98-inch minimum vertical height requirement).

### Free Technical Assistance

Answers to technical and general questions about restriping parking lots or other ADA requirements are available by telephone on weekdays. You may also order the ADA Standards for Accessible Design and other ADA publications, including regulations for private businesses, at any time day or night. Information about ADA-related IRS tax credits and deductions is also available from the ADA Information Line.

**Department of Justice**
**ADA Information Line**
**800-514-0301 (voice)**
**800-514-0383 (TTY)**

## Features of Accessible Parking Spaces for Cars



- **Sign with the international symbol of accessibility** mounted high enough so it can be seen while a vehicle is parked in the space.
- If the accessible route is located in front of the space, install wheelstops to keep vehicles from reducing width below 36 inches.

accessible route (min. 36-inch width)

- **Access aisle of at least 60-inch width** must be level (1:50 maximum slope in all directions), be the same length as the adjacent parking space(s) it serves and must connect to an accessible route to the building. Ramps must not extend into the access aisle.
- **Boundary of the access aisle must be marked.** The end may be a squared or curved shape.
- **Two parking spaces may share an access aisle.**

| 96" min. | 60" min. | 96" min. |
| 2440 | 1525 | 2440 |

## Three Additional Features for Van-Accessible Parking Spaces



- **Sign with "van accessible"** and the international symbol of accessibility mounted high enough so the sign can be seen when a vehicle is parked in the space

accessible route

- **96" min. width access aisle**, level (max. slope 1:50 in all directions), located beside the van parking space
- **Min. 98-inch-high clearance** at van parking space, access aisle, and on vehicular route to and from van space

| 96" min. | 96" min. | 96" min. |
| 2440 | 2440 | 2440 |

### ADA Website and ADA Business Connection

You may also view or download ADA information on the Department's ADA website at any time. The site provides access to the ADA Business Connection and the ADA design standards, ADA regulations, ADA policy letters, technical assistance materials, and general ADA information. It also provides links to other Federal agencies, and updates on new ADA requirements and enforcement efforts. **www.usdoj.gov/crt/ada/adahom1.htm**

### Reference:

ADA Standards for Accessible Design (28 CFR Part 36):
§ 4.1.6 Alterations;  § 4.1.2 Accessible Sites and Exterior Facilities: New Construction;  § 4.6.1 Parking and Passenger Loading Zones, and § 4.3 Accessible Route.                    Duplication is encouraged.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 2

**U.S. Department of Justice**

Civil Rights Division

*Disability Rights Section*



Americans with Disabilities Act

# ADA Compliance BRIEF:
### Restriping Parking Spaces

## Accessible Parking Spaces

When a business or State or local government restripes parking spaces in a parking lot or parking structure (parking facilities), it must provide accessible parking spaces as required by the 2010 ADA Standards for Accessible Design (2010 Standards).

In addition, businesses or privately owned facilities that provide goods or services to the public have a continuing ADA obligation to remove barriers to access in existing parking facilities when it is readily achievable to do so. Because restriping is relatively inexpensive, it is readily achievable in most cases. State and local government facilities also have an ongoing ADA obligation to make their programs accessible, which can require providing accessible parking.

This compliance brief provides information about the features of accessible car and van parking spaces and how many accessible spaces are required when parking facilities are restriped.



**One of six accessible parking spaces,
but always at least one,
must be van-accessible.**

The required number of accessible parking spaces must be calculated separately for each parking facility, not calculated based on the total number of parking spaces provided on a site. One of six (or fraction of six) accessible parking spaces, but always at least one, must be van accessible.

Parking for hospital outpatient facilities, rehabilitation facilities, outpatient physical therapy facilities or residential facilities have substantially different requirements for accessibility (see 2010 Standards 208.2).

| Minimum Number of Accessible Parking Spaces 2010 Standards (208.2) | | |
|---|---|---|
| **Total Number of Parking Spaces Provided in Parking Facility** (per facility) | **(Column A) Minimum Number of Accessible Parking Spaces** (car and van) | **Mininum Number of Van-Accessible Parking Spaces** (1 of six accessible spaces) |
| 1 to 25 | 1 | 1 |
| 26 to 50 | 2 | 1 |
| 51 to 75 | 3 | 1 |
| 76 to 100 | 4 | 1 |
| 101 to 150 | 5 | 1 |
| 151 to 200 | 6 | 1 |
| 201 to 300 | 7 | 2 |
| 301 to 400 | 8 | 2 |
| 401 to 500 | 9 | 2 |
| 500 to 1000 | 2% of total parking provided in each lot or structure | 1/6 of Column A* |
| 1001 and over | 20 plus 1 for each 100 over 1000 | 1/6 of Column A* |
| *one out of every 6 accessible spaces | | |

## Location

Accessible parking spaces must be located on the shortest accessible route of travel to an accessible facility entrance. Where buildings have multiple accessible entrances with adjacent parking, the accessible parking spaces must be dispersed and located closest to the accessible entrances.

When accessible parking spaces are added in an existing parking lot or structure, locate the spaces on the most level ground close to the accessible entrance. An accessible route must always be provided from the accessible parking to the accessible entrance. An accessible route never has curbs or stairs, must be at least 3 feet wide, and has a firm, stable, slip-resistant surface. The slope along the accessible route should not be greater than 1:12 in the direction of travel.

Accessible parking spaces may be clustered in one or more facilities if equivalent or greater accessibility is provided in terms of distance from the accessible entrance, parking fees, and convenience. Van-accessible parking spaces located in parking garages may be clustered on one floor (to accommodate the 98-inch minimum vertical height requirement).

2

## Features of Accessible Parking Spaces

Parking space identification sign with the international symbol of accessibility complying with 703.7.2.1 mounted 60 inches minimum above the ground surface measured to the bottom of the sign.

If the accessible route is located in front of the parking space, install wheel stops to keep vehicles from reducing the clear width of the accessible route below 36 inches.

Two parking spaces may share an access aisle except for angled parking spaces (see below).

Access aisle width is at least 60 inches, must be at the same level and the same length as the adjacent parking space(s) it serves, maximum slope in all directions is 1:48, and access aisle must connect to an accessible route to the building. Ramps must not extend into the access aisle.



accessible route

Parking space shall be 96 inches wide minimum, marked to define the width, and maximum slope in all directions is 1:48.

Boundary of the access aisle must be clearly marked so as to discourage parking in it. (State or local laws may address the color and manner that parking spaces and access aisles are marked.)

|          |          |          |
|----------|----------|----------|
| 96"min   | 60"min   | 96"min   |
| 2440     | 1525     | 2440     |

**Accessible Parking Spaces with 60-inch Minimum Width Access Aisle for Cars**

## Additional Notes:

Where parking spaces are marked with lines, width measurements of parking spaces and access aisles are to centerlines, except for the end space which may include the full width of the line.

Access aisles may be located on either side of the parking space except for angled van parking spaces which must have access aisles located on the passenger side of the parking spaces.

## Additional Features of Van-Accessible Parking Spaces

Van-accessible parking spaces incorporate the features of accessible parking spaces on the previous page and require the following additional features: a "van accessible" designation on the sign; different widths for the van parking space or the access aisle; and at least 98 inches of vertical clearance for the van parking space, access aisle, and vehicular route to and from the van-accessible space. The first image below shows a van-accessible space with a 60-inch minimum width access aisle. The second image shows a van-accessible space with a 96-inch minimum width access aisle. Both configurations are permitted and requirements for van-accessible signage and vertical clearance apply to both configurations.



Parking space identification sign with the international symbol of accessibility and designation, "van accessible." Note, where four or fewer parking spaces are provided on a site, a sign identifying the accessible space, which must be van-accessible, is not required.

Vertical clearance of 98 inches minimum to accommodate van height at the vehicle parking space, the adjacent access aisle, and on the vehicular route to and from the van-accessible space.

**Van-Accessible Parking Space with 60-inch Minimum Width Access Aisle**

Van parking space must be 132 inches wide minimum with an adjacent 60-inch wide minimum access aisle. A van parking space of 96 inches wide minimum with an adjacent 96-inch wide minimum access aisle is also permitted (see below).



**Van-Accessible Parking Space with 96-inch Minimum Width Access Aisle**



**Where four or fewer parking spaces are provided on a site, signage identifying the van-accessible parking space is not required.**

3

1   Peter Strojnik, State Bar No. 6464
    **STROJNIK P.C.**
2   1 EAST WASHINGTON STREET, SUITE 500
    PHOENIX, AZ 85004
3   (774) 768-2234
    Attorney for Plaintiff
4   Case Specific Email Address:
5   525sgilbertrd@aid.org

COPY

AUG 0 2 2016

MICHAEL K. JEANES, CLERK

DEPUTY CLERK

6

7           **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8             **IN AND FOR THE COUNTY OF MARICOPA**

9                                              CV2016  008849

10  Advocates for Individuals with Disabilities
    Foundation, Inc.,                           Case No:
11

12                    Plaintiff,
                                                **CERTIFICATE OF**
13  vs.                                          **ARBITRATION**

14  GILBERT PLAZA INC

15
                      Defendant.
16

17

18      The above cause is not subject to compulsory arbitration.

19      RESPECTFULLY SUBMITTED this Monday, July 25, 2016.
20

21

22                              Peter Strojnik, State Bar No 6464

23

24

25

26

27

28

1  Peter Strojnik, State Bar No. 6464
   **STROJNIK P.C.**
2  1 EAST WASHINGTON STREET, SUITE 500
   PHOENIX, AZ 85004
3  (774) 768-2234
   Attorney for Plaintiff
4  Case Specific Email Address:
5  525sgilbertrd@aid.org

6

7                **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8                   **IN AND FOR THE COUNTY OF MARICOPA**

9                                      CV2016  008849

10  Advocates for Individuals with Disabilities,
    Foundation, Inc.,                          Case No:
11

12                      Plaintiff,             **DISCOVERY REQUEST NO 1**

13

14  vs.

15  GILBERT PLAZA INC,
                             Defendants
16

17  **TO: DEFENDANT(S)**

18                      **INSTRUCTIONS FOR USE**

19
20  A. All information is to be divulged which is in the possession of the individual or
       corporate party, his attorneys, investigators, agents, employees or other representatives
21     of the named party.

22  B. When an individual interrogatory calls for an answer which involves more than one
       part, each part of the answer should clearly set out so that it is understandable.
23

24  C. When the terms "you", "Plaintiff" or "Defendant" are used, they are meant to include
       every individual party and include your agents, employees, your attorneys, your
25     accountants, your investigators, anyone else acting on your behalf. Separate answers
       should be given for each person named as the party, if requested.
26

27  D. When the term "document" is used, it is meant to include every "writing", "recording"
       and photograph" as those terms are defined in Rule 1001, Ariz. R. Evid.

28

E. Where the terms "claim" or "claims" are used, they are meant to mean or to include a demand, cause of action or assertion for something due or believed to be due.

F. Where the terms "defense" or "defenses" are used, they are meant to mean or to include any justification, excuse, denial or affirmative defense in response to the opposing party's claim.

G. Where the term "negotiation(s)" is used, it is meant to mean or to include conversations, discussions, meeting, conferences and other written or verbal exchanges which relate to the contract.

H. Where the term "ADA" is used, it refers to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., and its implementing regulations 28 CFR §§ 36.101 *et seq.*

I. Where the term "AzDA" is used, it refers to A.R.S. §§ 41-1492 *et seq.* and its implementing regulations, R10-3-401 et seq.

J. Where the term "Standards" is used, it refers to 2010 Standards of Accessibility Design promulgated by the United States Department of Justice.

K. Where the term "Public Accommodation" is used it refers to the facility referenced in the Verified Complaint, its management and ownership.

Pursuant to Arizona Rules of Civil Procedure, Rules 26 through 37, please provide the following discovery:

## UNIFORM CONTRACT INTERROGATORIES

Please answer Uniform Contract Interrogatories 1, 2, 4, 5, 6, 7, 8, 9, 10 and 11.

## REQUESTS FOR ADMISSIONS

1. Admit that the public accommodation which is the subject matter of the Verified Complaint was in violation of the AzDA, the ADA and the Standards.

    ADMIT _____          DENY_____

2. Admit that the public accommodation which is the subject matter of the Verified Complaint does not have policies regarding the operation and management of the Public Accommodation.

    ADMIT _____          DENY_____

3.  Admit that the Public Accommodation which is the subject matter of the Verified Complaint does not have a plan or policy that is reasonably calculated to make its entire public accommodation fully accessible to and independently usable by disabled individuals.

ADMIT _____          DENY_____

## NON-UNIFORM CONTRACT INTERROGATORIES
**(If spaces provided below are insufficient to fully disclose requested information, please attach additional sheets referencing the proper interrogatory)**

1.  If you did not unconditionally admit each of the Requests for Admission above, please state all facts and legal considerations for your denial.

2.  Please describe all actions you or anyone on your behalf have/has taken since 1991 to comply with the AzDA, the ADA and the Standards.

1
2
3
4
5
6
7
8
9
10   3.  Please describe in detail any actual or suspected non-compliance of the Public
11       Accommodation with the AzDA, the ADA or the Standards.
12
13
14
15
16
17
18
19
20
21
22
23
24   4.  Please identify the person or entity responsible for the Public Accommodation's
25       compliance with the AzDA, the ADA and the Standards.
26
27
28

1

2

3

4

5

6

7   5.  Please identify by name, address, telephone number, e-mail address any and all tenants

8       who rent or lease space at the Public Accommodation.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24               **REQUEST FOR PRODUCTION OF DOCUMENTS**

25

26   1.  Please produce any and all policies regarding the operation and management of the

27       Public Accommodation, including, without limitation, any plan or policy that is

28

5

reasonably calculated to make its entire public accommodations fully accessible to and independently usable by disabled individuals.

2. Please produce any and all architectural drawings, plats, maps and schematics for the Public Accommodation.

3. Please produce any and all rental or lease agreements for any space within the Public Accommodation effective on the date of the filing of the Verified Complaint until the present. Further produce all rental/lease applications and financial records of each renter or tenant.

4. If you claim that compliance with the AzDA, the ADA and/or the Standards is not readily achievable, please produce your complete financial records for the 5 years preceding the issuance of this Discovery Request No 1. These records include, without limitation, tax records, profit and loss statements, income statements, bank statements, credit applications,

RESPECTFULLY SUBMITTED this Monday, July 25, 2016.



Peter Strojnik, State Bar No 6464
*Attorneys for Plaintiff*